I have one more case and then we'll take a break. So the next case is United States v. Yuen. May it please the Court, my name is Nancy Tenney and I represent the appellant here, Mr. Richard Yuen. I would like to reserve five minutes for rebuttal. Your Honors, to affirm the District Court's ruling in this case would allow police officers to invade a person's privacy on nothing more than a hunch. And the Fourth Amendment does not allow that. This is a somewhat unusual case given the circumstances. It's not the typical traffic stop where an officer pulls a car over or the typical stop-and-frisk situation where an officer approaches an individual on the street. The critical moment to focus on for the Fourth Amendment analysis here is when the officers in the rear of Mr. Yuen's truck simply threw open the door. And thus, because this was more than simply an investigatory stop but rose to the level of a search as well, the officers needed to have both reasonable suspicion of criminal activity as well as some fear for the officer's safety. And neither of... Initially, in the District Court, Your Honor, we did argue that this was a search. And I think there's certainly an argument to be made that approaching the truck, throwing open the door, and revealing the interior of that truck, which was otherwise not open to the public, is certainly a search. And we relied on Arizona v. Hicks as showing even the slightest movement. Arizona v. Hicks was when police officers were lawfully in an apartment and made a slightly moved some stereo equipment to look at the serial number, and that was held to be a search that was not permitted. Here, there's obviously much greater movement, much greater exposure to something not in public view by simply throwing open the door. However, for the purposes of the appeal, we did focus on a Terry analysis. And I would argue that these circumstances cannot even meet the reasonable suspicion and reasonable fear analysis that's articulated in Terry. About the fact that they had received a tip, I don't know whether it was anonymous or not, that someone objectively suspected that something was going on. This was not a subjective determination by the officers. And they were dispatched to this area. I won't go into description. And they walked to the back of the truck, and they heard all this noise inside. There was no light. Why wasn't it reasonable for the officer of safety, as opposed to calling out, they would have raised the door to see what they were being confronted with? And I'd like to address a number of those factors, Your Honor. First, the citizen's tip they admitted was from an individual they had never known before. While he gave his name, they had no idea who this person was, whether he actually was the person who he stated that he was. And significantly, the report did not report any criminal activity. He simply said there's a truck in the Lowe's parking lot. Suppose there would have been a reasonable suspicion for the purposes. If the car had been moving, for example, to stop it or to go up to the truck and say, you know, But I understand you to be saying, and I understand the case law to be saying, that even so, there also has to be a reasonable fear to justify the throwing up the door, which is a separate question. Is that right? Absolutely, Your Honor. And maybe you could focus on that some. Certainly, Your Honor. I assume that if this was just a cherry shop without a search of an interior, it would be okay. But let's go on and discuss where the reasonable fear came from to let them throw up the door. Certainly, Your Honor. And what we have here is a truck parked in a public parking lot of a store that's opened in the middle of the day. I believe the call came in approximately 115 in the afternoon. There was no testimony that this was a high crime area or that there was any concerns for a terror alert. And again, they weren't responding to someone hearing gunshots or that the individual getting in the back of the van was seen with a gun or anything of that nature. And I think it's significant to look at what the officers did. When they first received the citizens, the information from the citizen, they thought it doesn't really seem to be much of anything. They approached the truck. They have the license plate. The citizen reported the license plate. They never checked the plate before they arrived. Once they arrive and see the truck, they don't do anything further to run the license plate. They don't call the citizen back to ask for any further details. Who was this person? Should we be afraid of this person? They don't call for backup. And I think most significantly, when they plan to open the rear door, they don't have their weapons drawn. In fact, their testimony was at no point during the entire encounter did they even touch their weapons. I think perhaps what happened here was the officers took somewhat of a shortcut, that they received a call, they didn't think it was much of anything, and they weren't afraid and simply approached the car and threw open the door and then later may have been surprised by what they found. Their actions do not show anything to be protecting themselves from any type of fear. And I think that given the circumstances. When the gentleman came out, did they frisk him? There was never any frisk. There was never any pat down. And, in fact, what the officer, the second officer, Officer Klein, who remained behind while Mr. Ewen went to the front of the cab, provided his license, provided his registration, it's only once the officer ascertains that there's marijuana in the back, he states that he then became fearful for the other officer's safety. Up until that point, there's simply nothing for them to be fearful of, and their actions speak to their lack of fear. And unless the Court has any further questions, I'd like to reserve my further time for rebuttal. Thank you. Good morning. May it please the Court, counsel. My name is Leonie Grant, and I represent the United States in this case. The basic issue and dispute, the fundamental dispute in the parties is with respect to the facts in this case. Counsel has, defense counsel has taken. Could you hold the mic a little closer to you? Certainly, Your Honor. Defense counsel has taken a whole multitude of facts and picked out two or three, and in the report to the brief to Your Honors, has argued that those brief little three facts do not support reasonable cause for the stop. The government's position is that. What about reasonable fear? I disagree with counsel's analysis of the facts. The officers received a call from an identified citizen who gave his name, his cell phone number, and requested that he be apprised, and ultimately, from the record, as you know, returned to the scene within ten minutes of the defendant's arrest to give a full statement to the officers. He reported that there was an unmarked truck with out-of-state plates, suspiciously parked, backed up into the bushes in the Lowe's parking lot, and that he had seen a person, a male, climb into the back of the truck, and that was reported as suspicious. Counsel is correct in saying that initially the officers weren't unduly alarmed, but the testimony in the record is that as they arrived at the scene, they could immediately see why the citizen had made the call, because the truck did appear to be parked in a manner that was suspicious and unusual. While it was. It's in a public parking lot. It's in a public parking lot, Your Honor, and as the court found, parked as far away from the entrance to the store as it could possibly have been parked. And if you look closely at the pictures, you can see that as Officer Hatfield testified, it was apparent that somebody took pains to back this truck in to what is basically a U-shaped flower bed area so that it was concealed on two sides, and there are no cars parked to the right of it and no cars parked to the other side of the U-shaped flower bed. The truck was backed up so far into the bushes that when Officer Klein stood at the right rear corner of the truck and attempted to look into that 8 to 10 inch opening, there was a tree actually entering part of the opening that he couldn't see around. Opening the door of a vehicle, and this was actually not even the door of the cab of the vehicle, but it was the back of the vehicle, was permitted where there was not any specific reason to think that there was something dangerous going on. In the cases, Michigan v. Long, there was some reason to think that there were guns around. And in Brown, the D.C. Circuit case, there would have been gunshots. Is there any case where somebody just pulled open a door like that, where there was simply on the basis that would allow a tarry stop of a person? I don't have one to cite to Your Honor. But the facts are not simply that there wasn't a gun or that no one had been seen with a gun. The facts are that – Are anything dangerous? The officers had no idea what was going on inside the truck. They heard indecipherable noises. They didn't know if there were – I guess I have another question, too. To me, this was the most dangerous way to deal with the situation. If there was something dangerous going on, to go and throw open the door and startle the person and give them a chance when you had no idea who it was or what they were doing, doesn't seem like a safe way to proceed. I understand your point. But respectfully, the district court disagreed. He felt that it was appropriate for the officers to use the element of surprise. Recall that Officer Hatfield describes that he's standing on a berm that is tilted above the rear of – Try a flashlight. He didn't feel that he could safely duck his head down. I think he described it as he would be putting his head down below the level of his knees to try to stick his face into an opening that was approximately – By knocking and saying, would you come out? His testimony was that they didn't – because they didn't know what was going on inside, because of their – And when the guy came out, they didn't pat him down. Pardon? When the guy came out, they didn't pat him down. I understand that. And that's because when the door first went up and they saw him standing there, he had a drill gun in their hand, and then at that point their fears were dispelled. But to finish my analysis as to why I think they were – They didn't have a gun next to him? In his pocket or somewhere else? He immediately walked toward them and stood above them with nothing in his hand but the drill gun and was compliant, as is pointed out in the defense brief, when they told him to step down. The process was fluid and ongoing. As he went around the corner with Officer Hatfield and Officer Kline realized what he was looking at, then his testimony was that he immediately was concerned about weapons because of the marijuana and his experience that that often involves weapons, and that's why he ran around the side of the truck to immediately put him in handcuffs. At any rate, you have Officer Hatfield standing at this awkward position where he could not safely put his face down to the truck. He also testified that they used the element of surprise because they didn't want to give somebody the opportunity to arm themselves or whatever. And the or whatever is because they didn't know whether they were dealing with terrorists, with a mobile meth lab, with a drug transaction that was taking place, somebody being abducted in the back end. They simply didn't know. And they were concerned about how prudently to intervene to establish what was going on. Remember that the district court's final conclusion was there was absolutely nothing reasonable about the way this truck was parked, the way the door was pulled down, and somebody was obviously doing something inside with no light. It was a dreary, overcast day, and the only light inside the truck was what was coming in between the bushes and that 10-inch opening, which the district judge found to be reasonable for the officer to conclude that nothing innocent was going on inside. Tell me about the discovery of the marijuana. As testimony came out, Officer Hatfield takes Mr. Ewan around to the driver's side of the truck. Officer Kline starts to follow and stops and for the first time realizes he's never really looked inside the truck because Mr. Ewan came forward so rapidly and stood right at the edge of the truck. As Officer Hatfield testified, he had his toes right at the edge of the truck. Above them, with the drill gun in his hand, he was focused on Mr. Ewan. And after Mr. Ewan got down, he glanced back in, he said something didn't seem right, and he looked at the back and he thought, his statement is, what, is that insulation or what? And then realizes he's looking at plastic bags of green leafy material and he smells the marijuana. His words were that he leaned in to see what it was. Does it mean that he invaded the airspace of the cargo? I don't believe it does, Your Honor. And if you look at the picture which was admitted into evidence as Plaintiff's Exhibit 5, it's page 3 of the government's supplemental excerpt of records. That's a good depiction of this protruding bumper that came out behind the truck and it shows a little bit of the angle of the berm that the officer was standing on. You can see from this photograph that he's standing at the left rear corner of the truck because that's the side he was starting to walk around when he was following Officer Hatfield and the defendant. He stops, looks back in, and when he leans in, he's talking about leaning in because the bumper's got him several inches from the rear of the truck, Your Honor. Did the district court make a finding about this? The district court made a finding that he did not make an explicit finding, but what he did reject, Your Honor, was Ms. Tenney's argument that the defendant must have gotten inside the truck and walked in to see the rear of the truck. He never made a conclusion about what he meant when he said that. He concluded that Mr. Klein or that Officer Klein remained at the back of the truck, looked inside, and saw the materials at the rear. He didn't specifically state whether there was an intrusion or not, an intrusion, except to say that he – except to reject the argument that he had entered the truck. And that he had remained at the rear and took what the government believes to have been his first look inside the truck. The – the – the – one thing I wanted to point out about the anonymous – allegedly anonymous tip is that this was not an anonymous tip. It was a 911 call from a citizen, very much like the circumstances of the Terry Crispo case, in which this Court found that a call from a citizen is much different from an anonymous tip. It's not like Florida v. J.L. or the other cases. Well, I don't think that's – what he reported was very general. He just said there's this truck down at the end of the parking lot. So there's no reason to suspect the reliability of what he said. But what he said doesn't necessarily add up even to any kind of suspicion. I agree, Your Honor. But the defense wants you to disregard the citizen call completely. And the government's position is that it's simply one additional factor in this totality of circumstances that the district court was persuaded – stated sufficient reasonable suspicion. And the – the Terry Crispo case gives reasons why a 911 call is more reliable than an anonymous informant's tip. And I wanted to point that out to the Court so that it wouldn't disregard what I think is an important factor, but one of very many. The officers made their own observations when they arrived at the scene, starting with their first conclusion that they could see why the citizen had made the call. But then they did their own investigation. They looked at where the truck was located. They looked at the manner in which it was parked. They looked at it vis-à-vis the door – the store front door, vis-à-vis the other vehicles around it. How would your – let's assume, again, that there was reasonable suspicion of something going on there. Although they had no clue why, which certainly suggests – a reasonable suspicion of what is really not clear. But why, if we were to accept this, a notion that they then had the right to just throw the door up, why wouldn't that just allow the police, whenever they believe there to be a violation of law going on inside a car, to open up the door of a closed car? I think this is a case that's uniquely – as defense counsel started out by saying, it is unique, Your Honor. It's not going to be the run-of-the-mill situation where somebody is pulled over in a car, which has windows where you can assess the number of people inside, typically, and what's going on inside the car, at least with respect to occupants. It's an unusual circumstance. I don't think it's going to open the floodgates. Lots of tinted windows in our tinted window cases. I appreciate that, Your Honor. But this is a very unique circumstance with that small opening in a public parking lot. I mean, a citizen – But there was a opening as opposed to no opening. And a citizen could have walked by and thrown open the door. It's not like it was parked on private property or in somebody's garage. And I think that's a significant difference as well. I'm out of time. Thank you. I'd like to just address a few points, Your Honor. First, with respect to the location and the manner in which the truck was parked being backed into the bushes, I would refer the Court to the Government Supplemental Excerpt of Records and Plaintiff's Exhibit 4, a picture taken that day. It shows how many other vehicles were in very close proximity to Mr. Ewen's truck. It also shows pretty much not quite directly across, but it shows another pickup truck, a standard yet large pickup truck that has backed into the space that it's in. It's completely regular, usual for a large vehicle to back into a space to facilitate then leaving that space later. Moreover, once the officers did approach the truck and heard noises inside, which they expected because the citizen had said someone went into the back of the truck, what they heard when pushed, what they described was construction noises, which I would say would lessen any suspicion of illegal activity. They're in Lowe's Home Improvement Store. That is what you might expect somebody to be doing in the back of their truck. With respect to seeing light in the back of the truck and whether Mr. Ewen was drilling in the dark, I would refer to, again, Government Supplemental Excerpt, Page 4. Plaintiff's Exhibit No. 8 shows that there was a light in the vehicle up close to the area in which Mr. Ewen was working. The officers, their testimony at the hearing was that they tried to look into the truck, but they really couldn't see. They couldn't tell whether or not there was light further inside the truck. And finally, the government stresses that the need to pull open the door was that the officer was in an awkward location, standing on somewhat of an incline behind the truck. The only reason the officer was standing behind the truck was because he had gone behind the truck in order to open it up. The other officer stayed on the parking lot level, was on a perfect level to conduct the investigation. And as we said before, we believe their actions show that they were not fearful. They never ---- From the parking lot level, he could have, with a flashlight, looked inside the truck. Could have tried to look inside the truck, could have knocked on the truck and asked Mr. Ewen to come out. They could clearly hear what was going on inside the truck, so it's reasonable to assume he would have heard them and come forward. As the record indicates, Mr. Ewen was completely compliant, came forward and cooperated. I didn't know that. That is true. Probably didn't know what they were dealing with. Absolutely, Your Honor. That is correct. Thank you. We thank counsel, the case of United States v. U.S. I'm going to break now and then proceed. All rise. This court stands in recess.
judges: B. Fletcher, Hamilton, Berzon